IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDDIE FREEMAN & YVONNE FREEMAN, | ) |
| Plaintiffs, | ) |
| v. | ) No. 15 C 8766 |
| THE CITY OF CHICAGO, et al., | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sued three Chicago Police Officers and the City of Chicago for violating their civil rights during a traffic stop. The Defendant Officers, Richard McCallum, Jason Lenski, and Roger Fieser, arrested the plaintiffs and charged them with traffic offenses and marijuana possession (Yvonne) and obstruction and resisting arrest (Freddie). The Freemans' four-count Complaint brings claims for false arrest and excessive use of force under 42 U.S.C. § 1983 against the Officers (Counts I and II), *Monell* policy under 42 U.S.C. § 1983 against Defendant City of Chicago (Count III), and malicious prosecution against the Officers (Count IV). The City moves to dismiss Count III under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons stated therein, the Court grants the City's motion to dismiss Count III without prejudice. (Dkt. No. 17.)

## BACKGROUND

The Freemans are African American and at approximately 7:30 p.m. on October 5, 2013, they were driving in the Englewood neighborhood in Chicago. (Dkt. No. 1 at ¶¶8, 12.) Yvonne was driving, Eddie was in the front passenger seat, and their two adult children were in the

1

backseat. *Id.* at ¶10. Officers McCallum, Lenski, and Fieser began following the Freemans with their headlights off. *Id.* at ¶14. Yvonne did not commit any traffic violations. *Id.* at ¶16. The Officers ran the license plate number on the Freeman's vehicle and learned that it had not been reported stolen. *Id.* at ¶17. The Officers pulled over the Freemans and at some point they received a Chicago Police Department investigative alert issued for an "Eddie Freeman." *Id.* at ¶¶18-19. They detained the Freemans and their children at least in part because of the investigative alert. *Id.* at ¶21. The investigative alert did not pertain to Eddie, Yvonne, or either of their children. *Id.* at ¶22.

During the stop, the Officers ordered Yvonne to get out of the car, took her to the back of the vehicle, and directed her to place her hands on the vehicle while they searched her. *Id.* at ¶¶23-25. Similarly, the Officers ordered both of the Freeman's children out of the car and told them to place their hands on the vehicle. *Id.* at ¶¶26-27. The Officers ordered Eddie out of the vehicle last and they did not ask for his name or to see his identification before they did so. *Id.* at ¶¶29-30. As Eddie complied with the Officers' order to exit the vehicle, he had his smart phone in his hand. *Id.* at ¶33. The Officers saw the phone, demanded that he hand it over, and grabbed Eddie by the arms and neck. *Id.* at ¶34. The Officers took Eddie's phone, handcuffed him, and put him back in the vehicle. *Id.* at ¶35. They then tried to convince the Freemans to sign a false statement admitting to marijuana possession by promising not to arrest any of them if they signed it. *Id.* at ¶36. The Freemans refused to sign the false statement. *Id.* at ¶37. The Officers charged Yvonne with possession of cannabis and two traffic offenses. *Id.* at ¶41. All charges against her were dismissed. *Id.* at ¶44. The Officers charged Eddie with felony for obstruction of justice and resisting arrest. *Id.* at ¶42. A jury found Eddie not guilty on all charges. *Id.* at ¶47.

The Officers' aforementioned conduct was undertaken pursuant to the policy and practice of the City and CPD in that as a matter of both policy and practice, the CPD encourages the conduct at issue here by allowing its police officers to detain citizens based on investigative alerts. *Id.* at ¶56. The CPD utilizes investigative alerts like arrest warrants despite the fact that they have not been reviewed and issued by an impartial magistrate. *Id.* Investigative alerts are issued by Chicago Police Officers and used by other CPD officers as their justification to arrest and detain citizens. *Id.* These investigative alerts are often not supported by probable cause to believe that the subject of the investigative alert has committed a crime. *Id.* The manner and scope of the CPD's policy and practices concerning investigative alerts caused the Officers' conduct that is at issue and other allegedly Fourth Amendment violations. *Id.* The City has been aware of this CPD practice, and has condoned its use, or has been deliberately indifferent to the constitutional violations that this policy has caused and continues to cause. *Id.*

## **LEGAL STANDARD**

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive a Rule 12(b)(6) challenge, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must ask itself *could* these things have happened, not *did* they happen. The standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833 (7th Cir. 2015) (quotations

omitted). At this stage, all well-pled facts are taken as true and viewed in the light most favorable to the plaintiff. *See Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007).

## DISCUSSION

### I. Policy of Investigative Alerts

The City moves to dismiss the *Monell* claim in Count III under 12(b)(6) because the CPD policy of issuing investigative alerts has been affirmed by courts. The City cites to a number of cases in the Seventh Circuit that contain references to investigative alerts and claims that they stand for the proposition that CPD's system of investigative alerts is constitutional. (Dkt. No. 17 at 2-3.) But none of these cases holds that the manner in which the Freemans allege the CPD uses the investigative alerts—in that the alerts condone police misconduct and officers often use alerts to justify arrests when there is no probable cause—is constitutional such that the Complaint fails to state a claim on which relief can be granted. *See Banks v. Fuentes*, 545 F.App'x 518 (7th Cir. 2013); *Fontanez v. Cornier*, 342 F.App'x 210 (7th Cir. 2009); *Turner v. City of Chi.*, No. 12 CV 9994, 2015 WL 7568373 (N.D.Ill. Nov. 25, 2015); *Sanders v. Cruz*, No. 08 C 3318, 2010 WL 3004636 (N.D.Ill. July 29, 2010). The City also asks the Court to take judicial notice of CPD Special Order S04-16, which describes the investigative alert system, and therefore conclude that this system is not plausibly unconstitutional. This would convert the motion to a judgment on the pleadings which the Court is not inclined to do at this stage. The Court does not at this stage determine as a matter of law whether the investigative alert policy as it is explained in a special order is constitutional.

## II. Sufficiency of the Complaint under 12(b)(6)

With respect to the sufficiency of the Complaint, the City argues that it lacks factual allegations suggesting anything other than an isolated incident as opposed to a policy. The City claims that the Complaint contains only boilerplate allegations about an unconstitutional policy without adequate supporting factual allegations. The Freemans counter that they have alleged sufficient facts for it to be plausible that the City has an unconstitutional policy with respect to use of investigative alerts because it alleges the unlawful arrest of Eddie and also how similar misconduct occurs as a result of the unconstitutional policy.

To state a claim for a policy that violated individuals' rights under Section 1983, the Freemans must allege that either "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) [the Freemans'] constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). The Freemans seek to hold the City liable under the second option, claiming that they have adequately alleged an unconstitutional policy relating to the CPD's widespread practice of using investigative alerts to sidestep the Fourth Amendment warrant requirement. (Dkt. No. 18 at 2-4.) Finding the City liable under *Monell* is possible based on "the allegation that official policy is *responsible* for the deprivation of rights." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Freemans are required to plausibly plead facts "show[ing] that their injuries were caused by the policies or practices complained of." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2009). Overall, "the factual

allegations in [the Freemans'] complaint must allow [the Court] to draw the reasonable inference that the City established a policy or practice" of condoning CPD officers' use of investigative alerts to justify violating the Fourth Amendment rights. *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011).

Because the Complaint asserts factual allegations in support of only one potential violation of the Fourth Amendment that was caused by the policy of using investigative alerts in lieu of an arrest warrant, it fails to survive a challenge under 12(b)(6). The Freemans allege that only once did CPD officers unconstitutionally arrest an individual (Eddie Freeman) based on an investigative alert. They then claim that this practice is widespread and a function of CPD policy regarding investigative alerts, but fail to allege additional events representative of such a policy and practice. The occurrence of single event is insufficient to plausibly plead that a widespread policy existed even when drawing all reasonable inferences in the light most favorable to the Freemans. *See Thomas*, 604 F.3d at 303 ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance.") (quotation omitted); *Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir. 2002) (three alleged incidents found too few to indicate a widespread custom). The Complaint's boilerplate claim that other constitutional violations have occurred as a result of the alleged policy without factual allegations of those incidents fails in the face of a 12(b)(6) challenge. *See McCauley*, 671 F.3d at 616; *McTigue v. City of Chi.*, 60 F.3d 381, 382-83 (7th Cir. 1995) ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient...The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts.") (quotation omitted); *see, e.g., Henderson v. City of Chi.*, Case No. 14 C 1164, 2015 WL 1954464 at *2

(N.D.Ill. Apr. 29, 2015). The Court accordingly grants the City's motion to dismiss Count III without prejudice.

## **CONCLUSION**

For reasons described above, the Court grants the City's motion to dismiss Count III without prejudice. (Dkt. No. 17.)

*Virginia M. Kendall*
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/19/2016